# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 11-79-GF-BMM |
| | CV 14-47-GF-BMM |
| Plaintiff/Respondent, | |
| vs. | **ORDER** |
| EDWARD RONALD STAMPER, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Stamper's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. A jury convicted Stamper of sexual abuse in violation of 18 U.S.C. § 2242(2)(B). The Court sentenced Stamper on March 7, 2012, to 480 months of imprisonment followed by a life term of supervised release.

The Court denied most of Stamper's claims for lack of merit on September 2, 2015. The United States filed an answer to the two remaining claims on October 21, 2015. The United States also moved to dismiss the remaining claims as having been untimely filed. After counsel was appointed to represent Stamper, the Court dismissed with prejudice as time-barred one of the two remaining claims, so that one of the claims remained. *See* Order (Doc. 163).

On June 27, 2016, the Court granted Stamper's motion to amend his § 2255

motion to add a claim under *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015). *See* Mot. to Amend (Doc. 156); Order (Doc. 158). But, since then, the Supreme Court has held that sentences imposed under the advisory guidelines scheme are not subject to Due Process challenges. *See Beckles v. United States*, __ U.S. __, 137 S. Ct. 886, 890 (2017). Stamper's claim rested on his designation as a career offender under U.S.S.G. § 4B1.1 (Nov. 1, 2011). His *Johnson* claim, therefore, is denied.

One claim remains. Stamper alleges that counsel provided ineffective assistance, both at trial and on appeal, when he failed to challenge a jury instruction that effectively deprived Stamper of the jury's decision on an element of the offense. *See* Supp. (Doc. 115) at 14 ¶ 8(h) (internal punctuation and quotation marks omitted) (emphasis added); *see also id.* at 34 ¶ 22(c), 35 ¶ 23(b). The parties deposed trial counsel and have submitted briefs and responses on the merits.[1]

## I. The Jury Instruction

Trial counsel agreed to the following instruction, taken from the Ninth Circuit Manual, on the elements of the alleged offense:

> In order for the Defendant to be found guilty of sexual abuse as charged in the Indictment, the government must prove each of the following elements beyond a reasonable doubt:

---

[1] Because the parties were directed to submit briefs, *see* Orders (Docs. 166, 172), the United States's motion for summary judgment (Doc. 173) is moot.

First, the Defendant is an Indian person;

Second, the Defendant knowingly engaged in a sexual act with [K.];[2]

Third, [K.] was physically incapable of declining participation in, or communicating unwillingness to engage in that sexual act; and

Fourth, the crime occurred within the exterior boundaries of the Rocky Boy's Indian Reservation.

Jury Instrs. (Doc. 67) at 18; *see also* 2 Trial Tr. at 287:17-25; 9th Cir. Model Crim. Jury Instrs. 8.172 (2010).

## II. Facts and Arguments Presented at Trial

The incident at issue at trial followed extended binge drinking at various locations, including Stamper's house, on January 22 and 23, 2011. In addition to K. and Stamper, Marlene Youpee and K.'s cousins R. and Ronnie Stump, Jr., were present at times. Stamper was older than everyone else, but age did not constitute an element of the crime. K. and the others knew Stamper through their families.

The United States's theory of the case contended that Stamper had sex with K. while she was passed out due to alcohol intoxication. K., R., Ronnie, and Marlene all testified that the entire group, including Stamper, had been drinking a lot and smoking a little marijuana throughout January 22 and 23, 2011. K. said she also had consumed "Sparks," a drink "like a Red Bull with vodka in it." The group

_____

[2] K. and R. were juveniles at the time and are referred to by initial only.

eventually landed at Stamper's house. Ronnie and Marlene testified that K. passed out and that they had carried her down the hall and put her in a bed under a blanket. Ronnie and Marlene testified that K. did not wake up or respond in any way.

Some time later, around 8:00 p.m., R. passed out on the couch in the living room. Stamper remained at the house while Ronnie and Marlene left to get more alcohol. When they returned, Ronnie went down the hall to check on K. Ronnie opened the door, turned on the light, and saw Stamper on top of K. having sex with her. Stamper was nude. K. was still wearing her shirt, but had no clothing from her waist down. Ronnie described K. as "dead limb" and "unconscious." Ronnie testified that Stamper's penis was in K's vagina. Ronnie went back to R., roused him, and returned to the bedroom with R. to confront Stamper. Ronnie testified that when he and R. "barged into the room," Stamper was shaking K., trying to wake her, and saying "something about 'she let me' or something," but K. "wasn't moving." 1 Trial Tr. at 138:6-19.

Stamper retreated, pursued by Ronnie and R., both of whom landed enough blows to leave traces of Stamper's blood in the living room. Marlene testified that she heard Ronnie cussing and heard Stamper say, "I didn't do it. I didn't do it." Marlene entered the bedroom and helped K., who had awakened, to find her clothes so they could leave. The group left Stamper's house and took Stamper's

4

car to a nearby relative's house. The group did not call the police. Stamper actually called the police to report Ronnie's and R.'s assault.

Shortly after the group left Stamper's house, K. went to the hospital for a medical check. Medical personnel found Stamper's semen in swabs taken from K.'s vagina and labia. A forensic toxicologist testified that a urine sample taken from K. at 1:00 a.m., about two and a half hours after the incident, showed an alcohol concentration of 0.201 to 0.265 gram percent. The forensic toxicologist opined that K.'s level of intoxication at 10:00 p.m. would have been between 0.18 and 0.25 gram percent. K. also had a trace amount of marijuana metabolite in her blood and urine.

K. testified that she had passed out and later awoke to find Stamper on top of her, penetrating her vagina with his penis. K. testified that she screamed for help and tried to throw him off. K. also testified, however, that for some period of time, she was "going in and out of consciousness" and did not remember what she did when she was "passed out." *See* 1 Trial Tr. at 58:24-58:9, 74:18-75:14, 83:23-24. K. further testified that she "kept blacking out . . . at the hospital . . . due to alcohol." *See id*. at 63:13-64:5. Neither the nurse nor the doctor who examined K. at the hospital suggested that she had "passed out" or appeared to them to be unconscious at any time. The nurse described K. as "articulate," "attentive," "very, very serious," and able to provide "good detail." 1 Trial Tr. at 90:7-9, 103:7-10.

FBI Agent McGrail testified regarding his interview with Stamper. Stamper claimed that K. had invited him to have sex with her when her cousins left the house. K. asked him to "go to a back room" and told him to "[h]urry up before Ronnie and R. get back." Stamper also claimed that he was "a little bit less intoxicated" than R. and K. On a scale of 1 to 10, where 10 was "extremely drunk," Stamper placed K. at "around an 8." Stamper did not claim that K. had passed out. The record remains unclear whether Stamper told Agent McGrail that K. had not passed out, or whether the subject of passing out simply had not been discussed. Stamper did tell Agent McGrail that "[K.] never said no or stopped him." 2 Trial Tr. (Doc. 88) at 216:16-218:16.

Stamper did not testify. His defense rested on his statement to Agent McGrail. *See, e.g.*, 1 Trial Tr. at 30:11-18, 31:9-25; 2 Trial Tr. at 302:1-6, 302:20-22, 304:8-306:7. In other words, he contested only the third element of the pattern jury instruction: whether "K. . . . was physically incapable of declining participation in, or communicating unwillingness to engage in that sexual act." Jury Instrs. (Doc. 67) at 18. Counsel emphasized in his closing argument evidence showing that K. could have done exactly what Stamper said she had done—invited him to have sex and participated willingly—without remembering that she had done so. *See* 2 Trial Tr. at 304:23-306:5. Counsel also argued that K. was not as drunk as most witnesses had testified. *See id*. at 310:7-311:7.

The Ninth Circuit has not considered directly whether the defendant's knowledge of the victim's incapacity constitutes an element of 18 U.S.C. § 2242(2)(B). The facts of Stamper's trial squarely presented the question and his counsel's argument reflected this focus. Stamper did not deny having had sex with K. He did not claim that he had engaged in a sexual act "through ignorance, mistake, or accident." *See* Jury Instrs. (Doc. 67) at 18, 19. Stamper instead cited evidence from which he claimed that a reasonable juror might find that K. appeared to others to have been conscious and "attentive," even "articulate" (as the hospital nurse said), when in fact she was "blacking out," unable to remember what she did or said, and not acting in a voluntary or willing way.

### III. Analysis

The Court first addresses whether 18 U.S.C. § 2242(2)(B) requires the prosecution to prove that the defendant knew that the victim had been physically incapable of consent. In turn, this analysis forces the Court to consider whether Stamper received a fair trial that included effective assistance of counsel guaranteed by the Sixth Amendment for his defense. *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel.

Stamper first must prove that counsel's performance in failing to request a jury instruction that required the jury find that Stamper knew that K. had been incapacitated fell below an objective standard of reasonableness. *Id.* at 687-88.

7

Stamper then must demonstrate that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Counsel's strategic decisions warrant a strong measure of deference if they were based on reasonable investigation and knowledge of the law. *Id.* at 690-91.

### A. Counsel's Performance

The United States correctly argues that counsel adopted a defense of consent. *See* U.S. Br. (Doc. 174) at 15; U.S. Resp. (Doc. 177) at 5. This defense comprises two components. Counsel argued that K. had not been as drunk as the witnesses described her. Stamper also argued that he believed that K. had consented and that he had no reason to know that K. had not been capable of meaning it.

In his deposition in this case, counsel recalled arguing that Stamper did not know that K. had been incapacitated or incapable of communicating unwillingness to participate:

> I said [to the jury], she told you that she did go in and out of consciousness and she doesn't remember much, but that doesn't mean my client was aware subjectively of what is going on in her mind. I mean, they were both drinking.
>
> And if she says come on back to my room, come on in the back room, but she doesn't remember saying that, but he does, then how could my client say, quote, "Well, golly, you know, she may be in a blackout state or she may be in this unconscious state"?

How would he know that?  How could he know that?  I mean, how could he know what she was thinking if she's acting this way?  So . . . that was part of the case, part of the defense.

Counsel Dep. (Doc. 169) at 33:14-34:4.  Asked whether he suggested to the jury

"that [K.] might have been conversing with Eddie Stamper even if she didn't

remember it," counsel responded, "Uh-huh.  Exactly.  Yeah." *Id.* at 49:4-7.

Counsel continued:

> A.    [M]y argument was, she was capable, and she communicated, according to Eddie, a willingness.  And then I took it a step further to say you have this, and then to bolster my argument against this [third] element, I was able to say, look, you know, it's common sense, how would you know. . . .
> I mean, how would you know if the person was blacked out or not?  I mean, there was no sign that says a person was blacked out, I mean, I don't know.

> Q.    So your argument was to apply that knowledge element or knowledge mental state to that element?

> A.    Bolster, to bolster, yeah.  I used that *because I don't have an instruction on it*, you know, I don't have an element that the government has to prove whether he knew or not.
> So to help bolster my argument, I was like, hey, think [sic] it's common sense, you know . . . .

> Q.    So would an instruction that he had to—that a specific instruction from the judge that he had to know that she was not capable of giving consent, would that be, would that have been helpful to you in this case?

> A.    Yes.

> . . .

> Q.    So did, aside from looking at the pattern instructions, did you

9

do any research?

A.     No.

Counsel Dep. at 60:19-61:23, 62:25-63:2 (emphasis added).

Counsel explained his reason for accepting the pattern instruction.  Counsel

testified that at the time of the trial in 2011 it was the Court's practice to "you

know, take whatever is given by the government and given by the defense and kind

of put his jury instructions together for the jury."  Counsel Dep. at 62:21-24.  The

Court's instruction tracked the Ninth Circuit's Model Instruction.  Jury Instrs.

(Doc. 67) at 18; 9th Cir. Model Crim. Jury Instrs. 8.172 (2010).

The Ninth Circuit Manual of Model Criminal Jury Instructions provides as

follows:

> The instructions in this Manual are models.  *They are not mandatory,*
> *and must be reviewed carefully before use in a particular case.*  They
> are not a substitute for the individual research and drafting that may
> be required in a particular case, nor are they intended to discourage
> judges from using their own forms and techniques for instructing
> juries.
> . . .
>                                     CAVEAT
>
>          These model jury instructions are written and organized by
> judges who are appointed to the Ninth Circuit Jury Instructions
> Committee by the Chief Circuit Judge.
>
>          *The Ninth Circuit Court of Appeals does not adopt these*
> *instructions as definitive.*  Indeed, occasionally the correctness of a
> given instruction may be the subject of a Ninth Circuit opinion.

9th Cir. Manual of Model Criminal Jury Instrs. at iii-iv (2010) (emphases added).

Counsel admitted that he did not believe that Stamper would receive a fair trial with the pattern instruction:

> Q.     [R]egarding whether the defendant knew that the alleged victim was physically incapable of declining participation and/or communicating an unwillingness to engage in a sexual act, not requiring the defendant to know that, if that's just a matter of absolute liability, that puts a really high burden on the defendant, doesn't it?
>
> A.     Well, I mean, it sucks, basically.  When you have, you know, when you have a case like Eddie's case, yeah, it is not fair to Eddie, but—
>
> Q.     Okay.  Right.  Okay.
>
> A.     But we got to deal with what we are given us and we got to do the best we can, it is just—
>
> Q.     So is it—but your whole theory here was that Eddie didn't know, right?
>
> A.     Well, I mean, that Eddie thought it was, thought it was consensual.

Counsel Dep. at 58:4-20.

## B.  Development of the Case Law

Stamper was indicted and tried in 2011.  The Court will review the landscape of cases that had addressed this issue at the time of Stamper's trial in 2011.  The Seventh Circuit, in *United States v. Peters*, 277 F.3d 963, 966-68 (7th Cir. 2002), previously had addressed a similar fact pattern and a similar dispute

regarding the defendant's knowledge of the victim's inability to consent to the sexual act.

The evidence presented at trial revealed the following: "(1) that on August 11, 1999, [victim] consumed a large quantity of alcohol; (2) that at around 10:30 p.m., [victim] and Peters were still awake; (3) that [victim] passed out on the living room floor; (4) that Peters asked [victim] to go to the rear bedroom at about 11:00 p.m.; (5) that sometime before 12:30 a.m., [victim] and Peters engaged in a sexual act; (6) that at about 12:30 a.m. on August 12, 1999, Jonnie and Donna found [victim] in the rear bedroom; and (7) that [victim] does not remember how she got to the rear bedroom or the sexual encounter with Peters." *Peters*, 277 F.3d at 967. The trial court's instructions to the jury included a requirement that Peters "knew that [victim] was physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." *Id.* The jury convicted.

Peters argued on appeal that the government had failed to present sufficient evidence that the victim had been physically incapable of declining consent and that Peters knew that the victim had been physically incapable of declining participation in the sexual act. *Id.* at 964. The Seventh Circuit first determined that the government had "failed to present sufficient evidence to establish that at the time the sexual act occurred, [victim] was incapable of declining participation

in the sexual act." *Id.* The Seventh Circuit cited the lack of any evidence presented "as to when between 10:30 p.m. and 12:30 a.m. the sexual act occurred, or explaining how [victim] got to the rear bedroom." *Id.* The Court noted evidence "that [victim] had been walking around immediately before 10:30 p.m." *Id.* The Court cited further evidence that "[victim] had been able in the past to function at some level after a night of heavy drinking" *Id.*

The Seventh Circuit next determined that the government also had failed to present sufficient evidence that Peters "*knowingly* had engaged in a sexual act with [victim] when she was physically incapable of declining participation in the sexual act." *Id.* (emphasis in original). The Court deemed the record "devoid of any evidence establishing that Peters acted knowingly." *Id.* The Court cited the same issues regarding the lack of evidence as to the victim's physical state before 10:30 p.m. and the lack of evidence as to when the sexual act had taken place between 10:30 p.m. and 12:30 a.m. *Id.* Based on this record, the Seventh Circuit reasoned that it would have been too attenuated for a rational juror to conclude that Peters knew that the victim had been incapable of declining consent. *Id.*

The Ninth Circuit had not decided at the time of Stamper's trial in 2011 whether the government must prove that the defendant knew the victim had been physically incapacitated. The Ninth Circuit's Model Jury Instructions at the time of Stamper's trial appear to have differed from those used by the Seventh Circuit.

13

The trial court in *Peters* had instructed the jury, of course, of the need to find that Peters knew that the victim had been incapable of declining consent. *Peters*, 277 F.3d at 966.

The Ninth Circuit's Model Jury Instructions still lack any requirement that the defendant knew that the victim had been incapable of declining consent. As a result, the Ninth Circuit still has not addressed directly the issue. The Ninth Circuit's decision in *United States v. James*, 810 F.3d 674 (9th Cir. 2016), provides helpful guidance, however, as much for what it omits as what it says.

The government charged the defendant in *James* with two counts of sexual abuse in violation of 18 U.S.C. § 2242(2)(B) – physical incapacity of the victim -- after family members discovered the defendant having sex with the victim under a blanket on the porch of the victim's house. *James*, 810 F.3d at 677. The victim had been born with severe cerebral palsy that left her confined to a wheelchair and unable to communicate clearly. She communicates primarily through nodding her head yes or no in response to questions and grunting. *Id.*

The government did not charge the defendant in the indictment under § 2242(2)(A), the subsection that covers the mental incapacity of the victim. The government also failed to offer an expert at trial to establish the victim's cognitive impairments. The government chose instead to rely on lay testimony from family members, caregivers, the nurse, and the BIA agent. *Id.* at 678. The victim could

not testify at trial. The government presented to the jury a videotape of an attempt by the BIA agent to interview the victim. The jury convicted the defendant following a three-day trial. The district court granted the defendant's Rule 29 motion and entered a judgment of acquittal. The government appealed. *Id.*

The Ninth Circuit analyzed numerous federal cases to support its conclusion that a defendant may be convicted under § 2242(2)(B) where the victim had some awareness of the situation and—while not completely physically helpless—was physically hampered due to sleep, intoxication, or drug use and thereby rendered physically incapable. *Id.* at 678-82. This "broad" interpretation of "physically incapacitated" led the Ninth Circuit to conclude that the jury should be left to decide this factual question based on the evidence presented at trial. The government had "proffered sufficient evidence—when viewed in the light most favorable to it—to allow a rational juror to conclude beyond a reasonable doubt that [the victim] was physically incapable of declining participation in, or communicating her unwillingness to engage in, a sexual act with [the defendant]." *Id.* at 682 (citing *Jackson v. Virginia*, 443 U.S. 307, 320 (1979) (setting forth proper standard for sufficiency of evidence review)).

The Ninth Circuit proceeded to analyze the legislative history of § 2242(2). Noting its clarity, the Ninth Circuit stated, "*Lack* of consent by the victim is not an element of the offense, and the prosecution need not introduce evidence of lack of

consent or of victim resistance." *James*, 810 F.3d at 682 (quoting H. Rep. No. 99–594, at 16) (emphasis in original). The Ninth Circuit further noted the reasonableness of this interpretation "as it would be very difficult to prove a sleeping or intoxicated person—who could not provide any verbal or non-verbal cues—did not consent to the sexual act." *Id.* The Court determined that this interpretation does not meant "that in the case of a severe physical disability the jury cannot consider the presence of consent when determining physical incapacity." *Id.* The Court concluded with the following pronouncement: "We hold that—to the extent a defendant raises a factual dispute regarding consent as a defense under § 2242(2)(B)—the jury is the appropriate fact-finder to weigh the question when evaluating the victim's physical incapacity to decline participation or communicate her unwillingness to engage in the alleged sexual abuse." *Id.* (citing *United States v. Fasthorse*, 639 F.3d 1182, 1185 (9th Cir. 2011)).

The parties admittedly did not raise the precise issue presented here of whether the government proved that the defendant knew that the victim had been incapable of providing consent. Nowhere in the extended analysis of the § 2242(2), its legislative history, or its application to the facts of the case does the Ninth Circuit determine, or even infer, however, that the government possessed this burden of proving the defendant's knowledge of the victim's inability to consent. In fact, earlier the same year as the trial in this matter, Stamper's counsel

had argued an appeal to the Ninth Circuit that challenged a conviction under
§ 2242(2). *Fasthorse*, 639 F.3d at 1182.

The Ninth Circuit in *Fasthorse* affirmed a conviction under § 2242(2).
Stamper's counsel also represented Fasthorse at trial and on appeal. The victim
testified that she had been drinking and smoking marijuana throughout the day and
that she remembered waking up that night while Fasthorse was having sex with
her. *Fasthorse*, 639 F.3d at 1184. Fasthorse testified that the victim "wasn't
asleep" and that the victim had consented to having sex with him. *Id.* Both the
government and Fasthorse presented witnesses who addressed the credibility of the
victim and Fasthorse and who corroborated various aspects of their competing
versions of events. *Id.* The government had presented sufficient evidence to the
jury to support Fasthorse's conviction. *Id.* Nowhere did the Ninth Circuit discuss
any requirement by the government to prove whether Fasthorse knew that the
victim had been physically incapacitated to the point of being unable to consent to
the sexual act. The Court simply noted that the jury had rejected Fasthorse's
version of events that the victim "wasn't asleep" and that the victim had consented
to the sexual acts. *Id.*

Against this backdrop the Court must assess whether Stamper's counsel
provided ineffective assistance of counsel at trial in 2011 when he failed to object
to the Ninth Circuit's Model Jury Instruction and failed to proffer his own

17

instruction that would have required the government to prove that the defendant

knew of the victim's incapacity. The Eighth Circuit addressed the issue shortly

after Stamper's trial in this case. The defendant in *United States v. Bruguier*, 735

F.3d 754 (8th Cir. 2013) (en banc), had been convicted of sexual abuse of an

incapacitated person. The defendant argued that the trial court had provided

inadequate jury instructions regarding the knowledge element.

Defense counsel had proposed an instruction that first would have required

the jury to find that the defendant knowingly had engaged in a sexual act with the

victim. *Id.* at 757. Defense counsel's proposed instruction also would have

required the jury to determine that the defendant "knew that [victim] was

physically incapable of declining participation in, or communicating unwillingness

to engage in, that sexual act." *Id.* The trial court rejected the proposed instruction.

The trial court's instructions closely mirror the instructions provided in Stamper's

case. The instructions required the jury to determine that the defendant

"knowingly" had engaged in the sexual act and that the victim had been physically

incapable of declining consent. *Id.* The defendant appealed.

The Eighth Circuit recognized that the case presented an issue of first

impression. The Eighth Circuit first analyzed the language of § 2242(2). The

Court relied on analysis by the Supreme Court in *Staples v. United States*, 511 U.S.

600, 605 (2011), and *Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009).

The Eighth Circuit recognized that the Supreme Court generally disfavors "offenses that require no mens rea." *Bruguier*, 735 F.3d at 758 (quoting *Staples*, 511 U.S. at 606). The Supreme Court instead requires some indication of congressional intent, either express or implied, "to dispense with mens rea as an element of a crime." *Id.* As a result, the Eighth Circuit determined that § 2242(2) contains a presumption that the "knowingly" applies to each element of the offense. *Id.*; *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68-73 & n.2 (1994) (interpreting the "knowingly" in a statute in a similar manner).

The Eighth Circuit immediately followed its decision in *Bruguier* with *United States v. Rouillard*, 740 F.3d 1170 (8th Cir. 2014) (per curiam). *Rouillard* presented the identical issue. The trial court had rejected the defendant's proposed jury instruction that would have required the jury to find both that the defendant knowingly had engaged in a sexual act with the victim and that the defendant "knew that . . . [victim] was incapable of appraising the nature of the conduct, or that she was physically in capable of declining participation in, or communicating an unwillingness to engage in, that sexual act." *Rouillard*, 740 F.3d at 1171. The Eighth Circuit reversed based on *Bruguier* and vacated the conviction. *Id.*, at 1171-72.

The Eighth Circuit's thorough analysis of the question in *Bruguier* provides a thoughtful and well-reasoned template through which to view the question. This

19

template remained elusive and unavailable to Stamper's counsel at the time of his trial in 2011. This template certainly was available to the Ninth Circuit in *James* in 2016. The Ninth Circuit has yet to adopt the approach of the Eighth Circuit.

It seems highly doubtful that the trial court at the time of Stamper's trial in 2011 would have deviated from the Ninth Circuit's Model Jury Instruction if faced with an objection from Stamper's counsel. To have questioned the pattern instruction admittedly would have comported with counsel's selected defense strategy and perhaps would have enhanced it. The Court cannot determine under these circumstances, however, that Stamper has met the deficient performance prong of the *Strickland* test.

### C. Stamper's Counsel on Appeal

Stamper's counsel on appeal focused on the sufficiency of the evidence presented to the jury and inconsistencies in the testimony of the victim, other witnesses, and Stamper's statement to Agent McGrail. Stamper's counsel on appeal did not challenge the trial court's decision to use the Ninth Circuit's Model Jury Instructions. The Ninth Circuit rejected out of hand Stamper's sufficiency of the evidence claim. *See* Mem. (Doc. 99) at 2, *United States v. Stamper*, No. 12-30095 (9th Cir. Feb. 11, 2013). The Ninth Circuit cited the well-established principle that it falls within the province of the jury to evaluate contradictory evidence and make credibility determinations as part of its role as the finders of

fact. *Id.* at 3.

Stamper's counsel filed the notice of appeal on March 12, 2012. (Doc. 78). The Ninth Circuit declined to hear oral argument on the case on January 9, 2013. (Doc. 98). The Seventh Circuit's decision in *Peters* in 2001 remained the only court of appeals that had addressed the question of whether § 2242(2) requires the government to prove that the defendant knew that the victim could not provide consent to the sexual act. *Peters*, 277 F.3d at 968. It would be another nine months after the Ninth Circuit's decision that the Eighth Circuit announced in *Bruguier* that § 2242(2) contains a mens rea requirement that forces the government to prove that a defendant knew that the victim could not consent to the sexual act. *Bruguier*, 735 F.3d at 773-74.

Stamper has failed to establish that his appellate counsel provided ineffective assistance when he failed to challenge on appeal the jury instructions provided by the trial regarding the elements of § 2242(2). No cases issued by the Ninth Circuit at the time of Stamper's appeal indicated that § 2242(2) requires the government to prove that the defendant knew that the victim had been incapable of consenting to the sexual act. In fact, no cases issued by the Ninth Circuit to date have so indicated. *See James*, 810 F.3d at 682. Counsel's performance on appeal under these circumstances cannot be classified as having fallen below the objective standard of reasonableness as required by *Strickland*.

21

### D. Conclusion

Stamper has failed to establish that the performance of his trial counsel and appellate counsel in failing to raise the issue of whether the trial court should have instructed the jury that the government had to prove that Stamper knew that K. had been incapable of declining consent to the sexual act fell below an objective standard of reasonableness. Stamper has not met the first prong of the *Strickland* test. He is not entitled to a new trial.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In this Order, the Court has denied Stamper's claim regarding the jury instruction. The Court recognizes, however, that Stamper presents a colorable claim for relief on an issue that has resulted in opinions by two separate courts of

appeals that have reached a contrary result.  *See Peters*, 277 F.3d at 967; *Bruguier*, 735 F.3d at 765-773.  These decisions and their apparent conflict with the Ninth Circuit's most recent pronouncement on the issue in *James* highlight the need for careful consideration of the question of whether § 2242(2) requires the government to prove that the defendant knew of the victim's inability to consent to sexual contact.  Stamper faces the added burden of persuading the Ninth Circuit that his counsel provided ineffective assistance at trial and on appeal when counsel failed to raise the issue in the form of an objection to the trial court's jury instructions and the proffer of his own jury instruction. Reasonable jurists could disagree with the denial of this claim.

In light of *Beckles*, a COA is not warranted on Stamper's *Johnson* claim.

The Court previously denied Stamper's other claims.  *United States v. Zepeda*, 792 F.2d 1103 (9th Cir. 2015) (en banc), superseded his claim regarding proof of his Indian status.  A jury randomly drawn from lists of registered voters and people with driver's licenses in the Great Falls Division is not likely systematically to exclude Native Americans.  Stamper did not identify a potentially unreasonable act or omission by trial counsel with respect to expert testimony on the victim's level of intoxication, the alleged "perjury" of government witnesses, the alleged webcam footage of his interaction with the victim before they went to his  bedroom, the 911 logs, police reports and time lines, and seven witnesses who

did not interact with K. near the time of the incident. While Stamper might have had a viable claim if counsel had not considered retrieving cell phone records, counsel's response to the claim showed the defense team considered it but reasonably decided not to pursue the matter. Stamper did not identify anything unreasonable about appellate counsel's performance with respect to his Indian status or the expert testimony on the victim's intoxication. A COA is not warranted on these claims.

Stamper failed to allege potentially valid claims under *Brady*, based on evidence in the custody of two of his friends rather than the United States; under the Sixth Amendment, based on denial of his motion for new counsel ten days before trial; and for outrageous government conduct, based on everything he says in his § 2255 motion. A COA is not warranted on these claims.

Finally, Stamper's claim that counsel should have called three witnesses who might have seen or spoken on the phone with K. near the time of the incident was dismissed with prejudice as time-barred. Stamper also failed to indicate a reason to believe these witnesses would, in fact, say they interacted with K. Reasonable jurists would not disagree with the procedural ruling, and the claim does not make a substantial showing that Stamper was denied a constitutional right. A COA is not warranted on this claim.

Accordingly, **IT IS HEREBY ORDERED**:

1.  The United States' motion for summary judgment (Doc. 173) is DISMISSED AS MOOT.

2. Stamper's remaining claims are DENIED and the motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 105) is DENIED.

3. A certificate of appealability is GRANTED as to Stamper's ineffective assistance of counsel claim regarding the jury instructions and DENIED as to all other issues. The clerk shall immediately process the appeal if Stamper files a notice of appeal.

4. The Clerk of Court shall ensure that all pending motions in this case and in CV 14-47-GF-BMM are terminated and shall close the civil file by entering judgment in favor of the United States and against Stamper.

DATED this 23rd day of May, 2018.

Brian Morris
United States District Court Judge